**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────────

JOHN URMEY,                                    04 Civ. 964 (JGK)

              Plaintiff,           **MEMORANDUM**
                                               **OPINION AND ORDER**
    - against –

AT&T CORP.,

              Defendant.
────────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    The plaintiff, John Urmey, sued his former employer AT&T Corp. ("AT&T") for alleged unlawful discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a); under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3; and under the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1 et seq. In his Amended Complaint, the plaintiff alleges that: 1) AT&T refused to provide him with a reasonable accommodation for his disability by allowing him to work from home; 2) AT&T created and maintained a hostile work environment, 3) AT&T retaliated against him because of his complaints of discrimination; and 4) AT&T unlawfully terminated him because of his disability.[1]

    AT&T now moves for partial summary judgment, arguing that the plaintiff cannot establish a prima facie case for

───────────────

[1] In opposing the motion for partial summary judgment, the plaintiff asserts that AT&T does not seek to dismiss the plaintiff's claims of denial of long-term disability benefits. Counsel for Urmey also submitted an Affidavit in Opposition to Defendant's Motion for Partial Summary Judgment ("Brickman Aff.") that alleged that AT&T denied Urmey the right to apply for long-term disability. However, no such claim was ever alleged in the Complaint or in

1

discriminatory termination because the plaintiff represented to the Social Security Administration that he was "unable to work" at the time of his August 2002 termination, and thus is judicially estopped from arguing he was a "qualified individual with a disability" for purposes of 42 U.S.C. § 12112(a) at the time of his termination.[2]  AT&T also argues that it had a legitimate business reason for terminating Urmey, that many of Urmey's allegations of harassment are barred by statutes of limitations, and that Urmey is not entitled to back pay or front pay.[3]

**I.**

The following facts, unless otherwise noted, are undisputed. John Urmey was employed by AT&T from 1987 until August 2002. (Proposed Statement of Material Facts Not in Dispute Pursuant to Local Rule 56.1 ("AT&T's 56.1 Statement") ¶¶ 1, 18; Plaintiff's Response to Defendant's Statement of Facts Pursuant to Local Rule

---

the Amended Complaint in this action.

[2] While at times AT&T phrases this argument in its brief as generally applying to the "plaintiff's claims of disability discrimination," this argument only applies, as AT&T's brief elsewhere recognizes, to the plaintiff's "claim of unlawful discharge based upon a disability." (Defendant's Memorandum of Law in Support of Motion for Summary Judgment 1, 6-7.)  The plaintiff's other claims regarding the refusal to provide a reasonable accommodation, hostile work environment, and retaliation are not the subject of the present motion.

[3] In its reply brief, AT&T also argues for the first time that Urmey's claim of hostile work environment harassment should also be dismissed because the alleged harassment was not pervasive enough to be abusive. (Reply Memorandum of Law on Motion for Summary Judgment ("Reply Br.") 7-9.)  AT&T did not move to dismiss this claim in this motion, and the claim cannot be dismissed on the basis of an argument made in a reply brief. See Riverkeeper, Inc. v. Collins, 359 F.3d 156, 166 n.11 (2d Cir. 2004); Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993).

56.1 ("Urmey's 56.1 Statement") ¶ 1.) Urmey's duties involved performing systems engineering services and acting as a project manager. (AT&T's 56.1 Statement ¶¶ 2-4; Urmey's 56.1 Statement ¶¶ 2-4.)

In or about February 1998, Urmey developed erythromelalgia, a rare and acute form of arthritis that caused his hands, wrist, and feet to swell when the temperature rises above a certain point, and made those limbs brittle when the temperature drops below a certain point. (AT&T's 56.1 Statement ¶ 5; Urmey's 56.1 Statement ¶ 5; Amended Complaint ("Compl.") ¶ 8.) Urmey was also diagnosed with some form of Attention Deficit Disorder. (AT&T's 56.1 Statement ¶ 6; Urmey's 56.1 Statement ¶ 6.) Urmey's condition required him to work in a temperature controlled room, and he was frequently bedridden. Urmey alleges that when he is able to work lying on his back in bed, he could fully perform his work duties. (Compl. ¶¶ 10-11.) In or about January 1999, Urmey requested and was granted an accommodation to work from home almost exclusively, which he did until about March 2002. (Compl. ¶ 13; AT&T's 56.1 Statement ¶ 8; Urmey's 56.1 Statement ¶ 8.).

In March 1999, Shri Jain became Urmey's supervisor. (AT&T's 56.1 Statement ¶ 7; Urmey's 56.1 Statement ¶ 7.) Urmey alleges, and for purposes of this motion AT&T does not dispute, that Shri Jain harassed Urmey because of his disability and refused to accommodate Urmey's requests regarding his disability. (Compl.

3

¶¶ 15-49.)[4]  On or about March 27, 2002, Urmey complained about Shri Jain's discrimination to Gina Riley of AT&T's EO/AA office. (Compl. ¶ 50.)  In April 2002, Shri Jain told Urmey that he would be assigned to work on the Network Performance Monitor on Edge project, that he would need to prepare two Acceptance Test Plans for the project, and that he would be required to work in the Middletown office of AT&T at least two days a week.  (AT&T's 56.1 Statement ¶¶ 9-11, 13; Urmey's 56.1 Statement ¶¶ 9-11, 13.)

After Urmey complained about lack of accommodation for his disability, he was permitted to continue working from home, but was given a one-month test in July 2002 to determine whether he could perform his work assignments from home.  Urmey did not complete the two Acceptance Test Plans by the August 2, 2002 deadline.  (AT&T's 56.1 Statement ¶¶ 12, 14-17; Urmey's 56.1 Statement ¶¶ 12, 14-17.)  Urmey alleges that he was told that he would not be terminated if he failed to complete the test plans, and that he was systematically precluded from completing the plans and harassed by Shri Jain.  (Urmey's 56.1 Statement ¶¶ 16-17; Compl. ¶¶ 71-76.)  Urmey was then terminated on either August 5 or 7, 2002.  (AT&T's 56.1 Statement ¶ 18; Urmey's 56.1 Statement ¶ 18; Compl. ¶ 78.)

---

[4] AT&T in its reply brief characterizes these actions as "conclusory allegations" of "isolated incidents," but does not otherwise dispute the factual allegations for purposes of this motion.  (Reply Br. 8.)

4

On November 12, 2002, Urmey filed an application for disability benefits with the Social Security Administration ("SSA") that stated, "I became unable to work because of my disabling condition on August 1, 2002." (AT&T's 56.1 Statement ¶ 19; Urmey's 56.1 Statement ¶ 19.) The SSA found that Urmey was disabled as of August 1, 2002 and entitled to monthly disability benefits. (AT&T's 56.1 Statement ¶¶ 29-30; Urmey's 56.1 Statement ¶¶ 29-30.) Urmey does not dispute that he was fully and permanently disabled by August 2002, but argues that he became fully disabled due to AT&T's failure to accommodate his otherwise manageable disability and due to Shri Jain's harassment. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl. Mem.") 12-13.) Specifically, Urmey alleges that the stress from the harassment worsened his condition, and that he was forced to seek psychiatric help and take Zyprexa, an anti-psychotic medication, and Buspar, an anti-anxiety medication. (Affidavit in Opposition to Defendant's Motion for Partial Summary Judgment ("Urmey Aff.") ¶¶ 81, 104-06.)

AT&T alleges that the business group that Urmey worked in was outsourced to IBM, and that virtually all employees in that division were either transferred to IBM or were terminated, with only three employees finding other employment at AT&T. (AT&T's 56.1 Statement ¶¶ 31-32; Urmey's 56.1 Statement ¶¶ 31-32.)

On January 14, 2003, Urmey filed charges of discrimination with the New Jersey Division of Civil Rights and the Equal Employment Opportunity Commission, and filed this action in federal district court on February 5, 2004. (AT&T's 56.1 Statement ¶¶ 33-34; Urmey's 56.1 Statement ¶¶ 33-34.)

**II.**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The substantive law governing

6

the case will identify those facts that are material, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. T.R.M. Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).

**III.**

AT&T argues that Urmey is judicially estopped from arguing that he was a "qualified individual with a disability" for purposes of 42 U.S.C. § 12112(a) at the time of his termination because Urmey represented to the SSA that he was "unable to work" on August 1, 2002. Section 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual ...." If Urmey was not a "qualified individual with a disability" at the time of his termination, he would be unable to establish a prima facie case of discriminatory discharge under the ADA. See Parker v. Columbia Pictures Industries, 204 F.3d 326, 332 (2d Cir. 2000).[5]

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Where the plaintiff in an ADA suit represented in a sworn application to the SSA that he is "unable to work," the plaintiff must "proffer a sufficient explanation" for the apparent contradiction. Cleveland v. Policy Management

---

[5] AT&T also moves for summary judgment dismissing the claim of unlawful termination under the New Jersey LAD. The parties agree that, with respect to the issues involved in the present motion, there is no difference between the LAD and the ADA, and thus the following discussion concerning the ADA claim controls the unlawful termination claim under the LAD. The remaining claims under the LAD, like the remaining claims under the ADA, are not at issue in

Systems Corp., 526 U.S. 795, 806 (1999); see also Parker, 204 F.3d at 333-34; Mitchell v. Washingtonville Cent. School Dist., 190 F.3d 1, 7 (2d Cir. 1999).

In this case, Urmey does not attempt to explain the apparent contradiction, and instead concedes that he was unable to work by August 2002. Urmey argues that he can still establish a prima facie case of discriminatory discharge because AT&T's failure to accommodate his otherwise manageable disability rendered him "unable to work" by August 2002. See Vializ v. New York City Bd. of Educ., No. 93 Civ. 8008, 1995 WL 110112, at *3 (S.D.N.Y. March 13, 1995) (denying a motion to dismiss and noting that if the plaintiff proves at trial that "she would have been able to return to work for the 1993-94 school year if defendant had granted plaintiff such a leave of absence, plaintiff would be entitled to relief under the Disabilities Act."); Donofrio v. New York Times, No. 99 Civ. 1576, 2001 WL 1663314, at *6 (S.D.N.Y. Aug 24, 2001) (citing Vializ and noting in dicta that the plaintiff "would be able to establish a prima facie case of discriminatory discharge under the ADA if the Times' failure to accommodate his disability prevented his recovery and rendered him unable to work at the present time," but recommending dismissal of the claim in any event because of the plaintiff's

this motion.

9

failure to participate in the interactive process to find a reasonable accommodation).

This argument has no merit. If Urmey can prove that the failure to accommodate his disability or the workplace harassment caused his total disability, this would be evidence of damages for Urmey's separate claims relating to the failure to accommodate his disability and the hostile work environment. Neither of those claims is the subject of the present motion. However, Urmey would still not be a "qualified individual with a disability" at the time of his termination, and thus cannot prevail on a wrongful termination claim under § 12112(a). See DiSanto v. McGraw-Hill, Inc., 220 F.3d 61, 64 (2d Cir. 2000) (per curiam) (affirming dismissal of the plaintiff's wrongful discharge claim under the ADA where the plaintiff failed to explain his unqualified statement to the SSA that he was unable to work).

Moreover, Urmey fails to explain, on this motion, what lack of accommodation caused his total disability, since despite Shri Jain's request that he work in the Middletown office, Urmey was permitted to continue working from home. Urmey alleges that the stress caused by his assignment and Shri Jain's harassment worsened his condition. However, even though Urmey plainly has had access to all the medical evidence concerning his disability, Urmey presents no medical evidence to demonstrate a medical

10

causation between Urmey's stress or lack of accommodation and his total disability.

Thus, because Urmey is judicially estopped from asserting that he was a "qualified individual with a disability" at the time of his termination, and thus cannot prevail on a discriminatory termination claim under § 12112(a), the motion for partial summary judgment is **granted** with respect to this claim. Because the parties have agreed that, for purposes of the present motion, the standards under the LAD are the same as those under the ADA, the motion for partial summary judgment dismissing the claims for wrongful termination under the LAD is also **granted.**

AT&T also argues that even if the plaintiff could establish a prima facie case for discriminatory termination, AT&T had a legitimate business reason for terminating Urmey: that Urmey failed to turn in the two Acceptance Test Plans by the August 2, 2002 deadline and failed to participate in a scheduled weekly conference call. This argument is moot with respect to the discriminatory discharge claim, and summary judgment has not been sought on the other claims.

In any event, there are disputed issues of material fact with respect to whether the "one-month test" of completing the two Acceptance Test Plans was, in fact, a pretext for unlawfully terminating Urmey. Urmey has alleged that he was systematically precluded from completing the plans by Shri Jain, and that he was

11

told the failure to complete the test would not be a basis for his termination – allegations not disputed nor even addressed by AT&T.

**IV.**

AT&T argues that many of the acts of discrimination in the Amended Complaint are barred by statute of limitations. Where, as here, the state within which the alleged act of discrimination occurred has a law prohibiting discrimination in employment and authorizes a state agency to enforce that law, a charge of discrimination under the ADA and Title VII must be filed within 300 days after the alleged unlawful act occurred. See 42 U.S.C. §§ 2000e-5(e)(1) and 12117(a). The plaintiff's claims arising under the New Jersey LAD are subject to a two-year statute of limitations. See Montells v. Haynes, 627 A.2d 654, 659 (N.J. 1993). Because Urmey jointly filed his charges of discrimination with the EEOC and the New Jersey Division of Civil Rights on January 14, 2003 and filed this suit on February 5, 2004, AT&T argues that many of Shri Jain's alleged discriminatory acts cited in the Amended Complaint fall outside the relevant statutory period, and thus are time-barred and may not be considered by the Court. (See Compl. ¶¶ 12-48.)

This argument has no basis, because the Court can consider alleged discriminatory acts outside the statutory time period for determining liability for a hostile work environment claim.

12

National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.") New Jersey courts have followed federal law in construing exceptions to the statute of limitations. See Shepherd v. Hunterdon Developmental Center, 803 A.2d 611, 624 (N.J. 2002) (applying the Morgan rubric); Poveromo-Spring v. Exxon Corp., 968 F. Supp. 219, 225-26 (D.N.J. 1997). Thus, AT&T's motion for partial summary judgment with respect to alleged discriminatory acts outside the statutory time period is **denied**.

**V.**

Finally, AT&T argues that Urmey could not recover back pay or front pay as a remedy. AT&T contends that Urmey cannot recover back pay because he represented to the SSA that he was unable to work since August 1, 2002, and because Urmey further admitted in his deposition that he could not work in 2003 or 2004. However, it is premature to decide what the proper measure of damages is for the remaining claims in the case. The plaintiff argues, for example, that had he not been terminated for allegedly retaliatory reasons, he could have applied for long-term disability, but instead he was thereafter informed that he could not apply for such benefits because he had been

13

terminated. (Brickman Aff. ¶¶ 7-9.) Moreover, the current value of lost earnings has been used as a measure of damages for an employee who was subjected to a retaliatory termination and who was psychologically unable to return to work. See McGory v. City of New York, No. 99 Civ. 4062, 2004 WL 2290898 (S.D.N.Y. Oct. 8, 2004).

AT&T also asserts that Urmey could not recover back pay beyond June 2003 because his business group was outsourced to IBM in June 2003, and Urmey would likely have been transferred to IBM or terminated anyway. However, at least three employees of that group were able to find other employment at AT&T, thus raising a disputed issue of fact as to whether Urmey also could have found other employment. Moreover, the outsourcing of Urmey's business group would not affect his claims for back disability pay.

Finally, AT&T argues that Urmey should not recover the equitable remedy of front pay because he does not desire reinstatement and has not sought other employment. "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers, or because of psychological injuries suffered by the plaintiff as a result of the discrimination, courts have ordered front pay as a substitute for reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001) (emphasis added). The question of whether AT&T's acts caused the plaintiff to become

unable to be reinstated, thus potentially warranting the equitable remedy of front pay, cannot be decided on the current record. AT&T's motion for partial summary judgment with regards to back pay and front pay is thus **denied without prejudice**.

## CONCLUSION

The Court has considered all of the arguments. To the extent not specifically addressed herein, the arguments are either moot or without merit. The motion for partial summary judgment is **granted in part** with respect to the discriminatory termination claim, and **denied** with respect to the other claims.

SO ORDERED.

Dated: New York, New York
       July 10, 2006

_____
John G. Koeltl
United States District Judge